## WALD v. PACKARD MOTOR CAR CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—CROSSING HIGHWAY—
QUESTION FOR JURY

It cannot be said that to attempt to cross a pavement 35 feet wide with a horse and wagon in front of an approaching automobile upwards of 450 feet away was as a matter of law contributory negligence.

2. DAMAGES—EXCESSIVE VERDICT.

In an action for personal injuries caused by a collision between defendant's automobile and plaintiff's wagon on a public street, evidence that plaintiff was upwards of 72 years of age, with an earning capacity of from $65 to $75 a month, that the horse was so badly injured it had to be killed, that the harness and wagon were damaged, that plaintiff incurred a doctor's bill of upwards of $50, that he suffered severe and permanent injuries, that the injuries occurred nearly two years before the trial, during which time he suffered severe physical pain, *held*, sufficient to sustain a verdict for $2,715.

3. EVIDENCE—AUTOMOBILES—ADMISSIONS OF DRIVER—RES GESTÆ.

Where the automobile colliding with plaintiff's wagon had defendant's license number upon it, testimony of a policeman that the driver told him, soon after the accident occurred, that he was in the employ of defendant, *held*, admissible by a divided court.

Error to Wayne; Williams, J., presiding. Submitted October 18, 1918. (Docket No. 90.) Decided December 27, 1918. Rehearing denied May 1, 1919.

Case by Andrew Wald against the Packard Motor Car Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed, by a divided court.

*Frederick J. Ward*, for appellant.

*C. W. Hitchcock* and *W. A. Collins*, for appellee.

See notes in 1 L. R. A. (N. S.) 223; 14 L. R. A. (N. S.) 251; 45 L. R. A. (N. S.) 699; 48 L. R. A. (N. S.) 946; L. R. A. 1915F, 30.

MOORE, J. The plaintiff was a man approximately 75 years of age. He used a horse and wagon in his business. On July 10, 1916, he was driving west on Ohio street in Bay City and was crossing Henry street when he was struck by an automobile. He claims the automobile was owned by the defendant company and was operated by a man by the name of Brown. From a verdict in favor of the plaintiff for $2,715, the case is brought here by writ of error. It is claimed defendant should have a directed verdict because of the contributory negligence of the plaintiff. This contention is based upon the claim that plaintiff might have avoided the accident. The question was left to the jury by the trial judge. The plaintiff testified that when he entered upon Henry street to cross it that the automobile was more than a block and a half, upwards of 450 feet, away. We do not think it can be said that to attempt to cross a pavement 35 feet wide under the circumstances shown here was as a matter of law contributory negligence.

It is claimed the verdict was excessive. This is based upon the fact that plaintiff was upwards of 72 years of age when hurt, with an earning capacity of $65 to $75 a month. The record shows that the horse was hurt so badly that a policeman killed it to put it out of its misery. That the harness and wagon were injured, that plaintiff incurred a doctor's bill of upwards of $50; that he suffered severe injuries, some of which the doctor testified would be permanent. Nearly two years had elapsed between the time of the injury and the time of the trial. During all that time the plaintiff claimed to have suffered severe physical pain. We do not think the verdict was so large that we should interfere.

The other assignments of error may be considered together. The assistant manager of the defendant company was called as a witness by the plaintiff. He

testified in substance that he gave directions to have a car sent out on the Pikers' tourist trip.

"I told the office manager to place a car and driver, the best driver he could find at the disposal of this good roads commission. I assume that my order was carried out."

He testified he heard a report was made to his company that an accident occurred in Bay City, but that he did not see the report.

"I might add that does not come under my jurisdiction, that is the reason I would not see it. * * * I know William E. Metzger. * * * When I made this order for a car of our company, I knew that Mr. Metzger was supposed to be in charge of the trip."

A policeman in Bay City saw a crowd collecting at the corner of Ohio and Henry streets when he was two blocks away. He at once went there.

"When I got there Mr. Wald was in the doctor's office, the doctor lived on the corner, on the southwest corner. That man that ran into him gave me his name as George Brown. The horse was laying on the corner of Ohio and Henry streets, near the curb. The wagon was unhitched and backed away about 6 feet from the horse. The horse was right at the curb, his head was at the east curb as it circles around, the northeast corner. I could not say where the horse was hit. I know he had a broken leg, I couldn't say which it was, I don't remember. It was on the night of July 10, 1916. After viewing the horse and rig, I then went into Dr. McGoech's office with Mr. Metzger.

"*Q.* Now you started a while ago to mention a man by the name of Brown; when did you first meet Brown?

"*A.* I saw him where the accident happened.

"*Q.* Whereabouts was Brown from where the horse and rig was?

"*A.* He was in his machine headed the opposite way. * * * He told me he was the man—

"*Mr. Ward:* I object to what he told him. * * *

"*The Court:* How soon was it after the accident.

Can you tell us how soon—how long it took to get down there?

"*A.* About ten minutes, I should judge.

"*The Court:* You may take the answer for the present.

"*Mr. Ward:* I want to object to it as incompetent and improper hearsay. * * *

"*Q.* The court says you may tell how you happened to talk to Brown.

"*A.* When I came back there where the accident happened this man was standing there in the machine. He told me that his machine ran into the rig. I asked Mr. Brown who he was and where he was from.

"*Q.* Did he tell you?

"*A.* He told me he was in the employ of the Packard Motor Car Company of Detroit. He told me he had just sent for the boss and he would be over in a short time. He sent another car for the boss, he was stopping at the Winona hotel, just a mile from where the accident happened. * * *

"*A.* He told me his name was Metzger. I did have a talk with Mr. Metzger. I did kill the horse."

The doctor to whose office the plaintiff was first taken died before the trial. Mr. Wald was put into the Packard car and driven by Mr. Brown to the office of Mr. Wald's family physician. The doctor got into the car and was taken by Mr. Brown to Mr. Wald's home. The number of the car was 5062-M. and that was the number of the license issued to the Packard Company.

It is the claim that what Mr. Brown said is incompetent, and that plaintiff failed to make a case and the verdict should have been directed in favor of defendant. Like questions were considered in *Hatter* v. *Dodge Bros.,* 202 Mich. 97. Much of the language used in that opinion is applicable here. It will not be necessary to repeat it.

Judgment is affirmed, with costs to the plaintiff.

Bird, Steere, and Fellows, JJ., concurred with Moore, J.

OSTRANDER, C. J. (*dissenting*). That the automobile belonged to defendant is to be inferred from the proven facts; that it was being driven by an employee of defendant rests upon the statement of Brown, who was in the car. after the accident and who told the policeman witness that he was in the employ of the defendant. I think the testimony of Brown's statement was not competent and that it was reversible error to receive and consider it.

BROOKE, STONE, and KUHN, JJ., concurred with OSTRANDER, C. J.